**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SCHOENMANN PRODUCE CO., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-1403 |
| | § | |
| THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Schoenmann Produce Company, Inc. and Farming Technology, Inc. (plaintiffs) are Texas companies that grow and ship potatoes. Plaintiffs contracted with defendant, Burlington Northern and Santa Fe Railway Company, to ship potatoes from various locations in the United States to plaintiffs' Houston facilities. Plaintiffs sued Burlington in Texas state court in October 2004, alleging mishandled potato shipments (either excessively low or high temperatures inside the rail cars), asserting state-law causes of action for breach of contract, negligence, misrepresentation, and violations of the Texas Deceptive Trade Practices Act, and seeking damages. In March 2005, plaintiffs amended their petition to assert fourteen additional claims for mishandled potato shipments. Burlington removed within thirty days after the amended petition was filed, asserting federal jurisdiction under 28 U.S.C. § 1441, based on 28 U.S.C. §§ 1337(a) and the Carmack Amendment, 49 U.S.C. § 11706.

Section 1337(a) provides that district courts have original federal jurisdiction of any case "arising under any Act of Congress regulating commerce" as long as, in an action under

the Carmack Amendment, the "matter in controversy for each receipt or bill of lading exceeds $10,000.00, exclusive of interest or costs." Burlington asserted that the amended petition pleaded at least some shipments exceeding $10,000.00.

Plaintiffs moved to remand, asserting that the shipments were not governed by the Carmack Amendment, but by 49 U.S.C. § 10709 (1996). That statute allows parties to contract for rail shipments with different rates and conditions than the Carmack Amendment requires. That statute also provides that "this section does not confer original jurisdiction on the district courts of the United States based on Section 1331 or 1337 of Title 28, United States Code." 49 U.S.C. § 10709(c)(2). Burlington has responded to the motion to remand, asserting that the potato shipments were governed by a different statute, 49 U.S.C. § 10502(e), which authorizes the exemption of potato shipments from regulatory oversight and allows carriers to offer alternative terms to the Carmack Amendment's liability provisions, as long as they also offer the Carmack Amendment coverage. Section 10502(e) does not contain a jurisdiction limitation provision.

This court held a hearing and asked the parties to furnish additional authority. In their initial briefing, plaintiffs took the position that there was no federal jurisdiction over their claims because Congress had precluded it in section 10709(c)(2). (Docket Entry No. 15 at 3–4). In their response to Burlington's supplemental reply, (Docket Entry No. 19), plaintiffs changed their position. Plaintiffs recognized that "there may be federal jurisdiction over claims such as those asserted in the underlying lawsuit," but asserted that it is not exclusive. (Docket Entry No. 19 at 3). This recognition appears to undermine the motion to remand.

If there is concurrent original jurisdiction in federal and state courts, the defendant has the opportunity to remove. *See, e.g., Baldwin v. Sears, Roebuck & Co.*, 667 F.2d 458, 459–60 (5th Cir. 1982). Despite the apparent concession of jurisdiction, the motion to remand is analyzed because plaintiffs have sought and obtained removal in another similar case in this district. *See Schoenmann Produce Co. v. Burlington N. & Santa Fe Ry. Co.*, 2005 WL1204072 (S.D. Tex. April 25, 2005). Based on the pleadings; the motion to remand, response, and reply; the parties' submissions; and the applicable law, this court denies the motion to remand, for the reasons set out below.

## I. Background

The background of the statutory provisions at issue is helpful. In 1906, Congress enacted the Carmack Amendment as part of the former Interstate Commerce Act. The Amendment, now found at 49 U.S.C. § 11706, created a national scheme to compensate shippers for goods damaged or lost during interstate shipping. *See New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131 (1958). The Carmack Amendment subjected a rail "carrier transporting cargo in interstate commerce to absolute liability for actual loss or injury to property." *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611 (9th Cir.1992).

To promote competition in the rail industry, the Railroad Revitalization and Regulatory Reform Act, Pub.L. No. 94-210, 90 Stat. 31 (1976), was enacted to allow the ICC (now known as the Surface Transportation Board) to exempt certain rail services from certain regulations. The Staggers Act, Pub. L. No. 96-448 (1980), continued deregulation. *See*

*Burlington N. R.R. Co. v. Public Util. Comm'n of Tex.*, 812 F.2d 231, 232 (5th Cir. 1987); *see generally Yamazen U.S.A., Inc. v. Chicago & Nw. Transp. Co.*, 790 F.2d 621, 622–623 (7th Cir. 1986) (describing purposes of Staggers Rail Act). Under the exemption authority of 49 U.S.C. § 10505 (now codified at 49 U.S.C. § 10502), the ICC exempted rail transportation of fresh fruits and vegetables from most federal regulations, including the Carmack Amendment's strict liability provisions. Potatoes were among the exempted farm products. Except for accounting and other reporting requirements, potatoes and other farm products are exempt from the provisions of Subtitle IV of Title 49, including the Carmack Amendment. Special requirements still apply to rail carriers contracting to carry agricultural products. The carriers must file a summary of each contract concerning agricultural products with the successor to the ICC, the Surface Transportation Board. *See* 49 C.F.R. 1313.2; 49 C.F.R. 1313.9.

One limit on deregulation was enacted in 49 U.S.C. § 10502(e), which provides:

> No exemption order issued pursuant to this section shall operate to relieve any rail carrier from an obligation to provide contractual terms for liability and claims which are consistent with the provisions of section 11706 of this title. Nothing in this subsection or section 11706 of this title shall prevent rail carriers from offering alternative terms nor give the Board the authority to require any specific level of rates or services based upon the provisions of section 11706 of this title.

Courts have interpreted this provision to mean that carriers and shippers may agree to terms other than Carmack Amendment liability, such as a limitation on liability or a shortened statute of limitation, for a reduced price as long as shippers have the option of shipping under the Carmack Amendment terms. *See, e.g.*, *Tokio Marine & Fire Ins. Co. v. Amato Motors,*

*Inc.*, 996 F.2d 874 (7th Cir. 1993) (carriers must offer full value rates to shippers under the Carmack Amendment but, under 49 U.S.C. § 10502(e), may offer alternative terms for limited liability); *Co-Operative Shippers, Inc. v. Atchison, Topeka, and Santa Fe. R.R. Co.*, 840 F.2d 447, 448 (7th Cir. 1988).

Another part of the Staggers Rail Act specifically allowed rail carriers to enter in private contractual arrangements with shippers. Title 49 U.S.C. § 10709(a), originally codified at section 10713, provides that "rail carriers providing transportation *subject to the jurisdiction of the Board under this part* may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions." 49 U.S.C. § 10709(a)(emphasis added). Another subsection stated that if parties enter into such contracts, "[t]he exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree." 49 U.S.C. § 10713(i)(2)(1994). When this statute was recodified after the Interstate Commerce Commission Termination Act of 1995, the material language in subsections (1) and (i)(2) remained, but language stating that the statute did not independently confer subject-matter jurisdiction under 28 U.S.C. §§ 1331 or 1337 was added. 49 U.S.C. § 10709(c)(2) states: "This section does not confer original jurisdiction on the district courts of the United States based on section 1331 or 1337 of title 28, United States Code." Plaintiffs rely on this provision in seeking remand.

Plaintiffs presented no evidence to support their argument that the potato shipments at issue were governed by section 10709. As noted, that section by its terms applies only to "transportation subject to the jurisdiction of the Board under this part." 49 U.S.C. § 10709(a). Section 10502 granted the Board authority to exempt certain rail services from Subtitle VI of Title 49, which includes section 10709. *See* 49 C.F.R. 1101.2(a) The Board exempted rail shipments of certain agricultural commodities, including potatoes. *See* 49 C.F.R. 1039.10.

The parties agree that the shipments in this case are governed by the BNSF Rules Book 6100-A. It states, "The provisions of 49 U.S.C. § 11706 do NOT apply to shipments which are governed by the terms of this Rule Book." (Docket Entry No. 6, Ex. D, p. 12). The record includes deposition testimony from Burlington representatives stating that the potato shipments at issue were governed by the terms of the Rules Book and not the default liability provisions of the Carmack Act. (Docket Entry No. 6, Ex. C, Hamilton Dep. at 26–29; 41–45).

Plaintiffs argue that the shipments in this case were not pursuant to the Carmack Amendment, but instead pursuant to section 10709 and therefore subject to the jurisdictional provision of section 10709(c)(2). Burlington's position is that the Rules Book applies to shipments exempted from certain regulations under 49 U.S.C. § 10502, and that section 10709(c)(2) does not apply to deprive this court of jurisdiction.

As noted, section 10709 by its terms does not apply to exempt shipments. Nothing in the transportation documents nor the Rules Book stated that the shipments at issue were under section 10709. Contracts entered into under section 10709 specifically cite the statute. *See, e.g.*, *Glenn Hunter & Assocs., Inc. v. Union Pacific R.R. Co.*, No. 04-3151, 135 Fed. Appx.

849, 854 (6th Cir. June 17, 2005) (unpublished opinion) ("This CONTRACT is made pursuant to 49 U.S.C. § 10709"); *Tamini Trasformatori S.R.L. v. Union Pacific R.R.*, No. 02-129, 2003 WL 135722, at *7 (S.D.N.Y. Jan. 17, 2003) (unpublished opinion) (holding that contract was not a section 10709 contract, even though it contained a statement that it was entered pursuant to section 10709, because it failed to offer full Carmack liability as an option); *Am. Rock Salt*, 387 F. Supp. 2d at 201 (holding that Carmack Amendment applied even though the contract stated that it was "made pursuant to 49 U.S.C. § 10709" because other provisions in the contract provided for its application); *cf. PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 541 (5th Cir. 2005) (citing STB decision that contracts were governed by section 10709 when "[e]ach contract affirmatively stated that it was made pursuant to § 10709, identified the origins and destinations, and specified the terms of the contract and the rates for the commodities."). An *ex parte* decision by the Surface Transportation Board, implementing the predecessor to section 10709, 49 U.S.C. § 10713, addressed "which contracts will be subject to this section." *Ex Parte No. 387*, 367 ICC 9, 10 (S.T.B. Oct. 8, 1982). The Board stated that any agreement made under the section "must specifically state that it is subject to this section." *Id.* at 10 and 11 (quoting 49 C.F.R. 1039.1(b)(2)).

In the section entitled "Cargo Loss, Damage and Delay Provisions/Liability Restriction," the Rules Book provided for limitations to the carrier's liability, including that the carrier's maximum liability was the lower of the original cost or the cost of replacement and that the carrier was not liable for any special or consequential damages or for damages due to market decline. (Docket Entry No. 6, Ex. D, at 12). The Rules Book also stated that

"Federal carrier law governs the determination of liability; no State or common law causes of action will be recognized." (*Id*. at 13). Consistent with the limitation to the authority to exempt under section 10502(e), the Rules Book provided: "As an alternative to the foregoing Restricted Liability provisions, Carrier offers Full Liability transportation subject to the terms and conditions of 49 U.S.C. § 11706 (Carmack Amendment) at a rate or charge higher than that applicable to transportation under restricted liability terms." (*Id*. at 14). It is undisputed that plaintiffs did not elect the "Carmack Amendment alternative." The alternative liability provisions in the Rules Book are authorized under section 10502(e), which exempts certain rail transportation from regulation by the Board with the limit that alternative liability terms of coverage of risk of loss cannot be offered unless the carrier also offers Carmack Amendment liability at a higher rate. The record shows that the potato shipments under the Rules Book were authorized under section 10502 and 49 C.F.R. 1313, which are not covered by the jurisdiction-limiting language of section 10709(c)(2).

Courts have recognized that a rail carrier's use of alternative liability terms, such as those included in the Rules Book, does not eliminate original federal jurisdiction for claims against the carrier for cargo damage. In *M.R. Swanson, Inc. v. Burlington N. & Santa Fe Ry. Co.*, No. 99-5496, 2001 U.S. Dist. LEXIS 25463 (E.D. Cal. Feb. 21, 2001), which also involved damage to potatoes shipped by rail, the court highlighted the difficulty of applying section 10709(c)(2) to claims arising from a contract entered under the exemption authorized by section 10502. "[S]ection 10709(c)(2)'s limitation on jurisdiction provision is uncertain in light of cases that have required disputes over products shipped pursuant to a contract to

be litigated under the Carmack Amendment." *Swanson*, 2001 U.S. Dist. LEXIS 25463 at * 18 n.5.

Courts have held that the Staggers Act did not "signal an end to the era of Carmack Amendment liability and a turn to liability premised only on breach of contract." *Tokio Marine*, 996 F.2d at 878. The Staggers Act "gave carriers increased latitude in offering 'alternative terms' to shippers," as long as the carriers also offered full-value rates. *Id.* at 879. When goods are damaged in rail transportation that is exempt under section 10502, the shippers sues the carrier under the Carmack Amendment, rather than under a state-law breach of contract or negligence claim; the carrier may plead as an affirmative defense that a limitation of liability applies, frequently in the form of an agreement limiting liability that complies with the requirements for exemption from full-value liability. *Id*; *see also Nippon Yusen Kaisha v. Burlington & N. Santa Fe Ry. Co.*, 367 F. Supp. 2d 1292 (C.D. Cal. 2005) (the shipper's cause of action for loss or damage is under the Carmack Amendment; after a shipper has made a *prima facie* case under the Carmack Amendment, the rail carrier may assert an affirmative defense in the form of the alternate liability scheme allowed under 49 U.S.C. § 10502(e)); *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp. 2d 1103, 1111 (C.D. Cal. 2001) ("The use of alternative terms does not negate the application of the Carmack Amendment; rather, the use of alternative terms is seen as a type of affirmative defense that a rail carrier may assert against a claim for damages under the Carmack Amendment."); *Gulf Rice Ark., LLC v. Union Pacific R.R. Co.*, 376 F. Supp. 2d 715, 719 (S.D. Tex. 2005) (even when the shipper and carrier have contracted for specific rates and

conditions, the Carmack Amendment still preempts all state and common law claims for breach of contract and negligence for goods damaged or lost by carriers).

Courts also recognize that "even when the shipper and carrier have contracted for specific rates and conditions, . . . the Carmack Amendment still preempts all state and common law claims for breach of contract and negligence for goods damaged by carriers." *Nippon*, 367 F. Supp.2d at 1298 (quoting *M.R. Swanson*, 2001 U.S. Dist. LEXIS 25463 at * 10); *see also Hughes Aircraft Co. v. N. Am. Van Lines, Inc*., 970 F.2d 609, 613 (9th Cir.1992) ("[Plaintiff] argues, however, that the Carmack Amendment does not preempt a state law negligence cause of action where the common carrier is operating on a contract basis. [This] argument is completely meritless."); *NYK Line (N. Am.), Inc. v. Burlington N. & Santa Fe Ry. Co.*, 222 F. Supp. 2d 1176, 1179 (C.D. Cal.2002) ("The Carmack Amendment preempts all state common law claims and constitutes the exclusive avenue for recovery in any suit brought against an interstate carrier for loss or damages to the transported goods."); *Intercargo Ins. Co. v. Burlington N. Santa Fe R.R.*, 185 F. Supp.2d 1103, 1112 (C.D. Cal.2001) (finding that even under alternative terms, due to "the preemptive scope of the Carmack Amendment, the only claim plaintiff may assert against BNSF is a claim for damages under the Carmack Amendment"). *See also Hoskins v. Bekins Van Lines, Inc.*, 343 F.3d 769, 772–80 (5th Cir. 2003) (holding that in a claim against a moving company, the Carmack Amendment provides the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier, enabling a carrier to limit its liability by showing that the shipper was given a reasonable opportunity to choose between levels of

liability).

In *Hoskins*, the Fifth Circuit noted that Carmack Amendment claims may be adjudicated in state court. At the same time, the court held that because the Carmack Amendment completely preempted claims for loss or damage to goods arising from the interstate transportation of those goods by a common carrier, such claims were removable if they met the matter in controversy requirement of 28 U.S.C. § 1337. *Hoskins*, 343 F.3d at 778 n.7. Whether removal is proper under 28 U.S.C. § 1441 depends on the original jurisdiction of federal district courts. "'[A] *state claim* may be removed to federal court in only two circumstances–when Congress expressly so provides . . ., or when a federal statute wholly displaces the state-law cause of action through complete pre-emption.'" *Hoskins*, 343 F.3d 769, 773 (5th Cir. 2003) (quoting *Beneficial*, 123 S.Ct. at 2063). The Fifth Circuit has held that "Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier," and that the complete pre-emption doctrine applies. *Hoskins*, 343 F.3d at 778 (emphasis removed). Such claims "only arise under federal law and could, therefore, be removed under § 1441." *Id.* (quotations removed).

The record in this case shows that the potato shipments were under the Rules Book and were exempt from the STB's jurisdiction under section 10502 and the implementing regulations. The statutory basis for the exemption, section 10502, does not contain the jurisdictional provision that plaintiffs invoke, section 10709(c)(2).

As the court recognized in *M.R. Swanson*, the application of section 10709(c)(2) is

problematic. Courts continue to apply the Carmack Act even when the carrier offers alternative terms; federal law completely preempts state-law claims for damage to goods damaged by a rail carrier; and complete preemption provides a basis for removing such claims if the amount in controversy is met. On this record, because defendants have shown that the shipments were exempt under section 10502, and not subject to section 10709, the jurisdictional limitation of section 10709(c)(2) does not apply.[1] Although plaintiffs could bring the claims in state court, Burlington had the right to remove. The claims are within federal jurisdiction, requiring the motion to remand to be denied.[2]

## II. Conclusion

The motion to remand is denied. A hearing to set a scheduling and docket control order is set for **March 9, 2006, at 4:00 p.m.**

SIGNED on February 24, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

[1] The opinion in *Schoenmann Produce Co. v. Burlington N. & Santa Fe Ry. Co.*, 2005 WL 1204072 (S.D. Tex. April 25, 2005), relies on 49 U.S.C. § 10709 to explain that the parties may elect to not apply the provisions of the Carmack Amendment. The opinion holds that, because the parties elected not to apply the Carmack Amendment to their shipments, no basis for federal jurisdiction exists. The opinion does not analyze the relationship of section 10709 to section 10502.

[2] Claims 1, 2, 3, and 15 of Schoenmann's First Amended Petition are for shipments valued at less than $10,000. (Docket Entry No. 1, Ex. A). This court has supplemental jurisdiction over these claims because each shipment made pursuant to the agreement between Burlington and Schoenmann "form[s] part of the same case or controversy" as the shipments that contained at least $10,000 in goods. 28 U.S.C. 1367; *see also Dress Barn, Inc. v. LTA Group, Inc.*, 822 F. Supp. 88, 90 (D. Conn. 1993) (exercising supplemental jurisdiction over shipments worth less than $10,000 because some shipments under the same contract, governed by the Carmack Amendment, met the amount in controversy requirement).